Mr. Chief Justice Watkins delivered the opinion of the Court' The appellant, in November, 1847, exhibited his bill in the De-sha circuit court, against the widow and minor heirs of Stephen? Harris, deceased, one of whom, pending the suit, intermarried-with the defendant, Brock, and one Jesse B. Badgett, as administrator of John Ball, deceased, alleging that Harris died intestate in what was then Arkansas county, and administration of his estate was granted to one John Maxwell. That, on the 19th-July, 1838, the complainant obtained judgment of allowance in the probate court of Arkansas county of a claim in his favor against the estate for'$635. That, by act of Assembly, of December 12, 1838, creating the county of Desha out of a portion of the territory of Arkansas county, authority was given for the' removal of administrations in certain cases from the old couiity to the new one. That the administrator and heirs resided, and the estate was situated in that portion of the territory stricken off to Desha to which the administration- was removed for the settlement of the estate. That, after the removal, Maxwell ceased to be administrator, and one William Sexton was appointed administrator do bonis non, who, not long after, made his final settlement as such, and was discharged, without taking any notice of the allowance in favor of the complain'ant, which remains-wholly unpaid; and that the remaining property of the estate, averred to be amply sufficient for the payment of all the debts owing by the estate, was turned over'to his widow and heirs. That- Ball, in his lifetime, of whom Badgett had become’ administrator, had obtained an allowance against the estate of Harris, which appeared to’ be unpaid, and in all respects- similarly situated to that of the complainant. That, in transmitting, the papers and records-relative to the estate of Harris, from the probate court of Arkansas to that of Desha county, these claims- were entirely omitted through mistake, as. he believes, and not with any design of injuring him. The hill prays for a decree against the widow and heirs of Harris, that they be decreed to pay him the amount of his claim with interest. A transcript of the record from the Arkansas probate court, of the allowance there in his favor, was produced by the complainant. The defendants, Mary B. Harris, William P. Harris, and Brock, answered, not denying any material allegation of the bill, but-professing their ignorance of the existence of such allowance ;• that, by the act of Assembly creating the county of Desha, it was the duty of the complainant to have procured the transcript of his claim, and transmitted it to the Desha probate court. That Sexton made a final settlement, and was fully discharged by order of the court on the 1st December, 1842, a transcript of which was produced, and they insisted that the demand of the complainant had not been presented within two years after the grant of administration de bonis non tó Sexton, and was barred by limitation. The cause was heard on bill, answer, replication, and exhibits; and it was in proof that certain negroes and a tract of land, worth-in the aggregate $2000, which were part of the estate of Harris, had come to the possession of bis widow and heirs; and then remained in their possession in specie in the county of Desna. The circuit court dismissed the bill for want of equity. By the 2d section of the act creating the county of Desha, it was made the duty of the plaintiff in all civil suits, and of the prosecuting attorney in all criminal cases, pending against persons who resided in the county of Desha thereby established, to procure from the clerk of the circuit court of Arkansas county, a transcript of the record and proceedings had in such causes,together with the papers belonging to the same, and file the same with the clerk of the circuit court of Desha county; and the act provided that such suits so transferred should have day and be proceeded in as though they had originated in Desha county. The' fourth section authorized the administrators residing within the limits of the new county to remove their administrations for settlement in the new county, and they were charged with the duty of procuring the transcript and attending to the removal. Besides that the second section of the act refers to suits pending in the circuit court and undetermined, this was a proceeding in the probate court, where all the claims of creditors being exhibited against the estate, the claim or suit of one could not be removed unless the entire proceedings in the matter of that estate were at the same time removed, to the end that it might be settled, the debts' paid,, and the residue of the estate distributed. The allowance of the claim in the probate court of Arkansas county was, in effect, a judgment, of which the administrator was bound to take notice; and the limitation of two years, within which claimants are required to exhibit their demands against estates, could have no application to it; though perhaps after ten years from the rendition of a judgment of allowance, the presumption of payment would arise to it, as of any other judgment. It is clear that, upon 'the facts stated, the court of chancery had jurisdiction to enforce payment of the allowance in the complainant’s favor, against the estate of the intestate, out of assets which •came to the hands of his heirs; and we are unable to see upon what ground the circuit court dismissed the bill for want of equity. The decree will be reversed, and the cause remanded, with instructions to the circuit court to have a guardian ad litem appointed for any one of the heirs of Harris who may be a minor, and allow such minor to defend by guardian; to rehear the cause; and, upon such rehearing., to decree in accordance with the opinion here expressed; to direct an account to be taken of the assets and property of the intestate which came to the hands of any of the defendants other than said Badgett, and the value thereof; and of any other allowance against said estate, if such there be, for the payment of which such property and assets would be liable; and to ascertain by such account if there be assets sufficient, which came to the hands of said defendants, to pay the claim of the complainant in full; or, if not, what pro rata he is entitled to receive on the same, and how much in value of the assets came to the hands of each defendant, and in what proportion each one ought equitably to contribute towards the satisfaction of such claim; and to decree that the defendants, each one his due proportion according to the value of the assets received by such defendant, do pay to the complainant the amount of his said allowance, with interest, in full or pro rata, as may appear from such account to be proper. As the claim of the intestate’s widow to dower accrued prior to the adoption of the Revised Statutes of 1839, it was subordinate to the claims of creditors, and out of the assets and property, if any, which came to her hands, she will be liable by such decree to contribute her due proportion towards the payment of the amount due the complainant.